UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BROAD. MUSIC, INC.; UNIV.-SONGS OF
POLYGRAM INT'L, INC.; ADULT MUSIC;
SCREEN GEMS-EMI MUSIC, INC.;
WARNER-TAMERLANE PUBL'G CORP.;
ELEKSYLUM MUSIC INC.; NO SURRENDER
MUSIC; WELSH WITCH MUSIC; EMI VIRGIN
SONGS, INC.; CORAL REEFER MUSIC,
                                                          1:12-CV-1253 (GTS/RFT)
                             Plaintiff,

v.

WEXFORD INR LLC d/b/a THE IRISH TIMES
PUB & REST.; and NIALL ROCHE, individually,

                             Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

HARRIS BEACH PLLC                               NEAL L. SLIFKIN, ESQ.
  Counsel for Plaintiffs
99 Garnsey Road
Pittsford, New York 14534

THE MORRISON LAW OFFICES, PC                    LAWRENCE MORRISON, ESQ.
  Counsel for Defendants
87 Walker Street, 2nd Floor
New York, New York 10013

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this copyright infringement action filed by the ten above-

captioned entities ("Plaintiffs") against Wexford INR LLC and Niall Roche ("Defendants")

pursuant to 17 U.S.C. § 101 *et seq.*, is Plaintiffs' motion for summary judgment.  (Dkt. No. 32.)

For the reasons set forth below, Plaintiffs' motion is granted.

# I. RELEVANT BACKGROUND

## A. Plaintiffs' Claims

Generally, liberally construed, Plaintiffs' Complaint alleges that, on or about June 2, 2012, at The Irish Times Pub & Restaurant in Saratoga Springs, New York, Defendants violated the following rights in the following manner: (1) the rights of Plaintiff Universal-Songs of Polygram International, Inc., under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *Brown Eyed Girl*, written by Van Morrison; (2) the rights of Plaintiff Adult Music under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *I Want You to Want Me*, written by Rick Nielsen; (3) the rights of Plaintiff Eleksylum Music, Inc., under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *Keep Your Hands to Yourself,* written by Dan Baird; (4) the rights of Plaintiff Welsh Witch Music, under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *Landslide*, written by Stevie Nicks; (5) the rights of Plaintiff EMI Longitude Music under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *Louie Louie,* written by Richard Berry; and (6) the rights of Plaintiff Coral Reefer Music under 17 U.S.C. § 101 *et seq.,* by publically performing, without authorization, the musical composition *Margaritaville*, written by James William Buffett a/k/a Jimmy Buffett. (*See generally* Dkt. No. 1 [Plfs.' Compl.].)

Familiarity with the factual allegations supporting these claims is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

**B.     Undisputed Material Facts**

Generally, the following facts were asserted and supported by Plaintiffs in their Local Rule 7.1 Statement of Undisputed Material Facts, and either expressly admitted or denied without an accurate supporting record citation by Defendants in their Local Rule 7.1 Response. (*Compare* Dkt. No. 32, Attach. 1 [Plfs.' Rule 7.1 Statement] *with* Dkt. No. 37 [Defs.' Opp'n Papers].)

1.     Plaintiff Broadcast Music, Inc. ("BMI") is a not-for-profit performing rights society that licenses the right to publicly perform copyrighted musical compositions and works on behalf of the copyright owners of those works. (Dkt. No. 33, at 1-2 [Lloyd Decl. at ¶¶ 3–4].)

2.     BMI acquires non-exclusive public performance rights by agreement with copyright owners, including publishing companies and independent composers. (Dkt. No. 33, at 1-2 [Lloyd Decl. at ¶ 4].)

3.     The other Plaintiffs in this suit are the copyright owners of the six musical compositions that are the subject of this lawsuit. (Dkt. No. 33, at 2 [Lloyd Decl. at ¶ 5].)

4.     The other Plaintiffs have granted BMI the right to maintain actions for infringement of the public performance rights in the musical compositions that are the subject of this lawsuit and to seek damages for such infringement. (Dkt. No. 33, at 2 [Lloyd  Decl. ¶¶ 5-8].)

5.     Defendant Wexford INR, LLC ("Wexford INR") owns 100% of the Irish Times Pub & Restaurant located at 14 Phila Street, Saratoga Springs, NY 12866 (the "Irish Times"). (Dkt. No. 32, Attach. 2, at 107 [Plfs.' Ex. E at No. 3].)

6.     Defendant Niall Roche ("Mr. Roche") owns 100% of Wexford INR, and is the general manager of the Irish Times. (Dkt. No. 32, Attach. 2, at 106-07 [Plfs.' Ex. E at Nos. 1-4].)

7.       Wexford INR and Mr. Roche ("Defendants") thus own and operate the Irish Times; and Mr. Roche has received approximately three hundred forty-eight thousand dollars ($348,000.00) in gross revenue from the Irish Times from 2009 to 2012. (Dkt. No. 32, Attach. 2, at 106-07 [Plfs.' Ex. E at Nos. 1-4]; Dkt. No. 37, at 1 [Defs.' Opp'n Papers, ¶¶ 1, 2].)

8.       The Irish Times features performances of live and recorded music. (Dkt. No. 34, at 1-2, 3 [Stevens Decl. at ¶¶ 4, 11-12].)

9.       Between February 2010 and June 2012, BMI mailed multiple letters to Defendants informing them of the need to obtain permission for public performances of copyrighted music, and offered to enter into a license agreement with Defendants. (Dkt. No. 34, at 2 [Stevens Decl. at ¶ 6].)

10.       Defendants did not enter into a license agreement with BMI, and did not have a license to perform any of the six songs identified in Exhibit A to the Complaint. (Dkt. No. 34, at 3 [Stevens Decl. at ¶ 10].)

11.       On January 11, 2011, BMI instructed Defendants to cease public performances of music licensed by BMI. (Dkt. No. 34, at 2 [Stevens Decl. ¶ 7].)

12.       Irish Times continued to feature public performances of BMI-licensed music after a BMI investigator documented the performances of songs owned by Plaintiff on June 2, 2012. (Dkt. No. 34, at 3 [Stevens Decl. ¶ 11].)

13.       BMI's investigator generated an audio recording and written report of the songs played at the Irish Times on June 2, 2012.  (Dkt. No. 34, at 3 [Stevens Decl. ¶ 11].)

14.       On June 2, 2012, at least "Brown Eyed Girl," "I Want You To Want Me," "Keep Your Hands To Yourself," "Louie Louie," "Margaritaville," and "Landslide" were performed at

the Irish Times.  (Dkt. No. 34, at 3 [Stevens Decl. ¶¶ 11, 12].)

15.     Each of these compositions is registered with the U.S. Copyright Office to one of the named Plaintiffs. (Dkt. No. 33, at 2-3 [Lloyd Decl.¶¶ 5, 7-9]; Dkt. No. 33, at 17-198 [Plfs.' Ex. B].)

16.     BMI has been granted by the other Plaintiffs the right to maintain actions for infringement of the public performance rights in the musical compositions that are the subject of this lawsuit and to seek damages for such infringement. (Dkt. No. 33, at 2 [Lloyd Decl.¶ 6].)

17.     Plaintiffs served their First Set of Interrogatories on Defendants, their First Request for Production of Documents on Defendants, and their First Requests for Admissions to Defendants on Defendants by First Class Mail, postage prepaid on February 7, 2013. (Dkt. No. 32, Attach. 2, at 1-2 [Slifkin Decl. ¶¶ 2-5].)

18.     Plaintiffs' First Requests for Admissions states that a response was required within thirty (30) days. (Dkt. No. 32, Attach. 2, at 2 [Slifkin Decl. ¶ 6].)

19.     No response from Defendants to Plaintiffs' First Requests for Admissions had been received by Plaintiffs as of November 8, 2013. (Dkt. No. 32, Attach. 2, at 2 [Slifkin Decl. ¶ 8].)

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Response thereto, is assumed in this Decision and Order, which (again) is intended primarily for the review of the parties.

## C.     Parties' Briefing on Plaintiffs' Motion

Generally, in support of their motion for summary judgment, Plaintiffs assert the following three arguments: (1) Plaintiffs have established a prima facie case of copyright infringement in a musical composition under 17 U.S.C. § 101 *et seq*, and Defendants have failed to create a genuine issue of material fact denying (a) the originality and authorship of the compositions involved, (b) compliance with all formalities required to secure a copyright under Title 17 of the United States Code, (c) that Plaintiffs are the proprietors of the copyrights of the subject compositions, (d) that Defendants performed the compositions publically for profit, and (e) that Plaintiffs or their representatives did not grant Defendants permission for such performances; (2) Defendants are vicariously and/or contributorily liable for the acts of infringement committed at the Irish Times; and (3) Plaintiffs are entitled to the relief sought (i.e., injunctive relief, statutory damages, and attorneys' fees and costs).  (*See generally* Dkt. No. 32, Attach. 3 [Plfs.' Memo. of Law].)

Generally, in response to Plaintiffs' motion for summary judgment, Defendants assert the following two arguments: (1) Defendants have created a genuine issue of material fact as to whether or not their conduct was intentional; and (2) because Defendants' conduct was not intentional, and because Defendants "offered to settle this matter," Plaintiffs' request for statutory damages in the amount of four thousand dollars ($4,000.00) per infringement is not warranted, and, at most, damages in the amount of seven hundred fifty dollars ($750.00) per infringement are warranted.  (*See generally* Dkt. No. 37, at 1-2 [Defs.' Opp'n Papers].)

Generally, in reply to Defendants' response, Plaintiffs assert the following two arguments: (1) Defendants' argument that their infringement was not intentional does not

preclude summary judgment in favor of Plaintiffs because willfulness is not an element of a claim for copyright infringement; and (2) Defendants do not dispute that Plaintiffs are entitled to the relief sought, and Defendants' dispute over an appropriate award of damages does not preclude the Court from exercising its discretion to award damages within the statutory limits. (*See generally* Dkt. No. 39 [Plfs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the moving party has met this initial responsibility, the nonmoving party must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party." *Anderson*, 477 U.S. at 248. As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As

the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

Implied in the above-stated burden-shifting standard is the fact that, where a nonmoving party willfully fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that nonmoving party is proceeding *pro se*.[1] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[2] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[3]

Of course, when a non-movant has failed to respond to a movant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are *disputed* in the record presented on the movant's motion, and (2) assure itself that, based on those *undisputed* material

---

[1]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[2]    *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[3]    *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the movant's motion does is lighten the movant's burden on its motion.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a moving party's statement to be admitted, to the extent that those facts are supported by evidence in the record, where the nonmoving party has willfully failed to properly respond to that statement[4]–even where the nonmoving party was proceeding *pro se*.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law (submitted in support of its motion for summary judgment), the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[6]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument,

---

[4]     Among other things, Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[5]     *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[6]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.     Legal Standard Governing Plaintiffs' Claims for Copyright Infringement**

Because Defendants have failed to challenge the legal standard cited by Plaintiffs as governing their claims for copyright infringement, the Court will only briefly recite that standard in this Decision and Order,  which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 32, Attach. 3 [Plfs.' Memo. of Law]; Dkt. No. 37 [Defs.' Opp'n Papers]; Dkt. No. 39 [Plfs.' Reply Memo. of Law].)

"Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *see* to 17 U.S.C. § 501(a). In cases dealing with musical works, "copying" means the right "to perform the copyrighted work publicly." 17 U.S.C. § 106(4). Thus, in order to establish a *prima facie* case of copyright infringement in a musical work, a plaintiff must prove the following:

> (1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code; (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action; (4) that the musical composition were publicly performed for profit (by the defendants); and (5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

10

*Broad. Music, Inc. v. DFK Entm't, LLC*, 10-CV-1393, 2012 WL 893470, at *2 (N.D.N.Y.

Mar. 15, 2012) (Sharpe, J.) (citing *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 912 [D.

Conn. 1980]).

**C.**    **Legal Standards Governing Plaintiffs' Requested Forms of Relief**

Defendants have also failed to challenge the legal standards cited by Plaintiffs as

governing their requested forms of relief: (1) joint and several liability; (2) permanent injunctive

relief; (3) statutory damages; and (4) reasonable attorneys' fees.  As a result, the Court will only

briefly recite those legal standards where necessary in Part III.B. of this Decision and Order,

which (again) is intended primarily for the review of the parties.  (*See generally* Dkt. No. 32,

Attach. 3 [Plfs.' Memo. of Law]; Dkt. No. 37 [Defs.' Opp'n Papers]; Dkt. No. 39 [Plfs.' Reply

Memo. of Law].)

**III.**    **ANALYSIS**

**A.**    **Whether Plaintiffs' Motion for Summary Judgment on Their Claims for**
       **Copyright Infringement Should Be Granted**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Plaintiffs' memoranda of law.  (Dkt. No. 32, Attach. 3 [Plfs.' Memo. of

Law]; Dkt. No. 39 [Plfs.' Reply Memo. of Law].)  The Court would add only three points.

First, in their Rule 7.1 Response, Defendants have willfully failed to deny the facts

asserted in Plaintiffs' Rule 7.1 Statement of Material Facts.  The Court uses the word "willfully"

because, at the time they filed their opposition to Plaintiffs' motion on December 9, 2013,

Defendants were represented by counsel, and actually had received an extension of the deadline

for filing an opposition.  (*See, e.g.,* Dkt. No. 35.)  Indeed, at the time they filed their opposition

papers, Defendants had been represented by counsel for nearly a year. (Text Minute Entry dated

Jan. 2, 2013; Dkt. No. 25 [Am. Answer filed Feb. 23, 2013].)[7]  Despite these facts, Defendants made the following decisions in their opposition papers: (1) they altogether omitted responses to Paragraphs 1-19 of Plaintiffs' Rule 7.1 Statement; and (2) they actually supported Paragraph 7 of Plaintiffs' Rule 7.1 Statement by stating in Paragraph 2 of Niall Roche's affidavit that the facts demonstrate that Defendants have "a modest business making $348,000 in gross revenue [from] the Irish times [sic] for a 3-year period." (*See generally* Dkt. No. 37 [Defs.' Opp'n Papers].) Each of the facts asserted in Plaintiffs' Rule 7.1 Statements are supported by accurate record citations.  As a result, each of the facts asserted in Plaintiffs' Rule 7.1 Statement is deemed admitted by Defendants, pursuant to Local Rule 7.1(a)(3).  *See, supra,* Part II.A. of this Decision and Order.[8]

Second, not only were the facts asserted in Plaintiffs' Rule 7.1 Statement not sufficiently opposed by Defendants, the legal arguments in Plaintiffs' memorandum of law were not specifically opposed by Defendants, thus lightening Plaintiffs' burden with regard to those legal arguments, which Plaintiffs have met.  *See, supra,* Part II.A of this Decision and Order.  The Court notes that Plaintiffs submitted affidavits, certified infringement reports, and copyright registrations sufficient to establish their *prima facie* case for copyright infringement. (*See*

---

[7]        In addition, the Court notes that, on September 7, 2012, the Clerk's Office supplied Defendants with a copy of the Northern District's *Pro Se* Handbook, which contains a notice of the consequences of failing to properly oppose a motion for summary judgment, because Defendants were proceeding *pro se* at that time.  (Docket Entry for Sept. 7, 2012.)  *See also* United States District Court for the Northern District of New York *Pro Se* Handbook, at 41-42, http://www.nynd.uscourts.gov/documents/ProSeHandbook2008.pdf.

[8]        The Court notes that it is not the duty of a congested district court to *sua sponte* scour some 384 pages of record evidence for a dispute of material fact.  (Dkt. Nos. 32, 33, 34, 37.)  *See Stephenson Equip. v. ATS Specialized, Inc.*, 10-CV-1517, 2013 WL 4508444, at *8 & n.12 (N.D.N.Y. Aug. 23, 2013) (Suddaby, J.).

*generally* Dkt. Nos. 32, 33, 34.) *See also* 17 U.S.C. § 410(c) (stating that in a judicial proceeding, a copyright registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *DFK Entm't, LLC*, 2012 WL 893470, at *2 (holding certified infringement reports, affidavits, and copyright registrations for the musical works sufficient to grant summary judgment in favor of plaintiff on its copyright infringement claim).

Third, Defendants' assertion of "innocent" infringement is immaterial for purposes of rebutting Plaintiffs' *prima facie* case. Under the Copyright Act, intent or knowledge is not an element of infringement. *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1113 (2d Cir. 1986). Rather, innocence is significant to a district court only in determining an award for statutory damages. *Fitzgerald Pub. Co.*, 807 F.2d at 1113; *see also, infra,* Part III.B. of this Decision and Order. What is important is that Defendants failed to deny the unauthorized use of six of Plaintiffs' copyrighted musical compositions or otherwise rebut Plaintiffs' *prima facie* case for copyright infringement. *See, e.g., Fitzgerald Pub. Co.*, 807 F.2d at 1114 (finding that defendant admitting to use of plaintiff's copyrighted work alone made defendant liable for copyright infringement absent a showing of authorization). *See also, supra,* Part II.A of this Decision and Order.

For all of these reasons, Plaintiffs' motion for summary judgment as to their claims for copyright infringement is granted.

## B. Whether Plaintiffs Are Entitled to Summary Judgment as to the Relief Requested

As indicated in Part I.C. of this Decision and Order, Plaintiffs argue that Defendants are vicariously and/or contributorily liable for the copyright infringement committed at the Irish Times and should therefore be ordered to pay statutory damages for each of the claims for infringement, as well as reasonable attorneys' fees. Plaintiffs additionally request the Court order permanent injunctive relief. Defendants have not disputed that Plaintiffs are entitled to the relief sought, but rather respond that their infringement was not intentional, that they have offered to settle the case, and that the Court should therefore award minimal damages. Court addresses each of these arguments in turn.

### 1. Whether Defendants Are Jointly and Severally Liable for Infringement

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiffs' memoranda of law. (Dkt. No. 32, Attach. 3 [Plfs.' Memo. of Law]; Dkt. No. 39 [Plfs.' Reply Memo. of Law].) The Court would add only the following analysis.

Where direct liability for copyright infringement is inapplicable, a defendant may still be held responsible either as a vicarious or contributory infringer. *See Screen Gems-Columbia Music, Inc. F. Metlis & Lebow Corp.*, 453 F.3d 552, 554 (2d Cir. 1972) ("Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable."). An individual may be held liable as a "contributory infringer" if the individual, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Broad. Music, Inc. v. DFK Entm't, LLC*, 10-

CV-1393, 2012 WL 893470, at *3 (N.D.N.Y. Mar. 15, 2012) (Sharpe, C.J.) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 [2d Cir. 2010]). In other words, "willful blindness is knowledge" under copyright law. *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003); *see also DFK Entm't, LLC.*, 10-CV-1393, 2012 WL 893470, at *3 (stating that a person who knows or has "reason to know of the direct infringement," and "engaged in 'personal conduct that encourages or assists the infringement,' "will be liable for contributory infringement") (citing *Arista Records, LLC.*, 604 F.3d at 117). In contrast, an individual may be held liable as a vicarious infringer even without proof of knowledge. *Gershwin Pub. Corp. v. Columbia Artists Mgmt., In.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Instead, "an individual is jointly and severally liable as a vicarious infringer 'if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *DKF Entm't, LLC*, 2012 WL 893470, at *3 (citing *Gershwin Pub. Corp.*, 443 F.2d at 1162).

Here, the Court finds that Defendant Wexford is a contributory infringer. It is undisputed that Defendant Wexford owns 100% of the Irish Times, and that it also profited from and had the right to control the pub's activities. (Dkt. No. 32, Attach. 2, at 106-07 [Plfs.' Ex. E at Nos. 1-4].) Such facts are enough to find Defendant Wexford jointly and severally liable for the infringement of the musical compositions. *See DFK Entm't*, 2012 WL 893470, at *3 ("[I]t is undisputed that [defendant] is liable as a contributory infringer since it not only owned and operated [the club], but it also profited from, and had the right to control, the club's activities.").

In addition, the Court finds that, at a minimum, Defendant Roche is a vicarious infringer. It is undisputed that Defendant Roche owns 100% of Wexford INR, is the general manager of the Irish Times, and received approximately three hundred forty-eighth thousand dollars

($348,000.00) in gross revenue from the Irish Times from 2009 to 2012. (Dkt. No. 32, Attach. 2, at 106-07 [Plfs.' Ex. E at Nos. 1-4].) Such facts are enough to find Defendant Roche jointly and severally liable for the copyright infringement committed at the Irish Times. *See DFK Entm't*, 2012 WL 893470, at *3 (finding individual liable as a vicarious infringer where record showed defendant was sole member and owner of LLC, which in turn owned club, at which defendant was the general manager who had right and ability to supervise infringing activity).

For all of these reasons, the Court finds Defendants jointly and severally liable for the infringement of Plaintiffs' musical compositions.

### 2. Whether Plaintiffs Are Entitled to a Permanent Injunction

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiffs' memoranda of law. (Dkt. No. 32, Attach. 3 [Plfs.' Memo. of Law]; Dkt. No. 39 [Plfs.' Reply Memo. of Law].) The Court would add only the following analysis.

Under the Copyright Act, a court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain" further copyright infringement. 17 U.S.C. § 502(a). "Injunctive relief is warranted where a copyright owner establishes liability and a threat of continuing violations." *Broad. Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) (Sharpe, J.) (citing *Warner Bros. Entm't, Inc. v. Carsagno*, 06-CV-2676, 2007 WL 1655666, at *4 [E.D.N.Y. June 4, 2007]). A showing of continued infringement in the past and a likelihood of infringement in the future may warrant the issuing of a permanent injunction. *See N. Lights, Inc,*, 555 F. Supp. 2d at 332 (finding that a permanent injunction was justified because plaintiffs' complaint and affidavits established that defendant failed to desist in infringing

plaintiffs' copyright despite repeated notice); *Broad. Music, Inc. v. Haibo, Inc.*, 10-CV-0240,

2012 WL 843424, at *5 (W.D.N.Y. Mar. 12, 2012) (granting plaintiffs a permanent injunction

against unauthorized public performances of any copyrighted compositions licensed through

plaintiffs where plaintiffs established defendants willfully disregarded any attempt by plaintiffs

to enter into a licensing agreement or otherwise comply with copyright law).

This Court has required a plaintiff to establish four elements in order to obtain a

permanent injunction in a copyright infringement case:

> (1) that is has suffered an irreparable injury; (2) that remedies available at
> law, such as monetary damages, are inadequate to compensate for that
> injury; (3) that, considering that balance of hardship between the plaintiff
> and defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

*Elec. Creations Corp. v. Gigahertz, Inc.*, 12-CV-1423, 2013 WL 3229125, at *4 (N.D.N.Y. June

25, 2013) (Suddaby, J.) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 [2006]).

Here, Plaintiffs have established the first two elements (i.e., irreparable harm and an

inadequate remedy at law). Defendants infringed upon Plaintiffs' musical compositions on

numerous instances by publically performing the works at the Irish Times without a license.

(Dkt. No. 34, at 3 [Stevens Decl. ¶ 11].) Defendants did so even after they had notice that their

conduct constituted copyright infringement. (Dkt. No. 34, at 2 [Stevens Decl. at ¶ 6].) This

supports the inference that, without a permanent injunction, Defendants will continue their

illegal conduct. In addition, generally, monetary damages awarded "after the fact" do not

provide an adequate remedy where, as here, the status of Plaintiffs' copyright has been harmed

or suffered loss in value. *See Music, Inc. v. Metro Lounge & Café LLC*, 10-CV-1149, 2013 WL

286361, at *7 (N.D.N.Y. Jan. 24, 2013) (Mordue, J.).

Moreover, Plaintiffs have established the third element (i.e., a balance of hardships weighing in plaintiffs' favor). Generally, defendants do not suffer hardship when required to comply with the law and obtain a valid license to plaintiffs' copyrighted musical compositions. On the other hand, plaintiffs do suffer hardship when deprived of their legal rights. Here, as stated above, Defendants failed to cease their infringing conduct despite having had notice that their conduct constituted copyright infringement, which supports an inference that their conduct is likely to continue.

Finally, Plaintiffs have established the fourth element (i.e., that the public interest would be served by a permanent injunction). Specifically, the Court finds that it is in the public's interest to grant this permanent injunction to ensure future copyright holders are protected from infringers, and to inform the public of the importance of copyrights in musical composition.

For all of these reasons, Plaintiffs' request for a permanent injunction is granted.

### 3. Whether Plaintiffs Are Entitled to the Statutory Damages Requested

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiffs' memoranda of law. (Dkt. No. 32, Attach. 3 [Plfs.' Memo. of Law]; Dkt. No. 39 [Plfs.' Reply Memo. of Law].) The Court would add only the following analysis.

Pursuant to 17 U.S.C. § 504(c), a plaintiff in an action for copyright infringement shall be entitled to statutory damages of "not less than $750 or more than $30,000" for "all infringements involved in the action, with respect to any one work, as the court considers just." 17 U.S.C. § 504(c)(1). *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010) ("District courts enjoy wide discretion in setting the amount of statutory damages."). If a court finds that a

defendant committed the infringement "willfully," it may increase the statutory damages award up to an amount of a hundred and fifty thousand dollars ($150,000.00) per work. 17 U.S.C. § 504(c)(2); *see DFK Entm't*, 2012 WL 893470, at *4 (stating that "[d]amages may be as low as $200 per infringement if such infringement was 'innocent,'" but where an infringement was "willful," damages may be as high as $150,000.00 per infringement). "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Elec. Creations Corp.*, 2013 WL 3229125, at *6. On the other hand, a defendant asserting innocence must show that it "was not aware and had no reason to believe that its acts constituted an infringement." *D.C. Comics, Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990).

Further, "statutory damages for copyright infringement are available without proof of plaintiff's actual damages or proof of any damages at all." *Elec. Creations Corp.*, 2013 WL 3229125, at *6 (citing *All-Star Mktg. Grp. v. Media Brands Co.*, 775 F. Supp.2d 613, 626 [S.D.N.Y. 2011]). Rather, in determining a proper statutory award, courts generally consider the following factors:

> (1) the infringer's state of mind; (2) the expenses saved and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in proving evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Bryant*, 603 F.3d at 144; N. *Lights, Inc.*, 555 F. Supp.2d at 332. Moreover, statutory damages for copyright infringement should "significantly exceed the amount of unpaid license fees" in order to place "infringers on notice that it costs less to obey the copyright laws than to violate" those

same laws. N. *Lights, Inc.*, 555 F. Supp.2d at 332. Consequently, district courts often impose statutory damages in an amount more than double unpaid licensing fees upon finding the infringement was not innocent. *N. Lights, Inc.*, 555 F. Supp.2d at 332, *see also, e.g., Broad. Music, Inc. v. Melody Fair Enter., Inc.*, 89-CV-0070, 1990 WL 284743 (W.D.N.Y. July 31, 1990) (awarding statutory damages four times the amount of unpaid licensing fees).

Here, the Court finds that Defendants willfully infringed Plaintiffs' copyrights. The record indicates that Plaintiffs mailed more than thirty (30) letters to Defendants advising that Defendants needed a license to perform the musical compositions for which Plaintiffs hold the rights. (Dkt. No. 34, at 2, 3 [Stevens Decl. ¶¶ 5, 6, 12, 13, 14, 15].) Further, Plaintiffs placed more than fifty (50) phone calls to Defendants, and personally spoke to Defendant Roche on fifteen (15) of those occasions. (Dkt. No. 34, at 3 [Stevens Decl. ¶ 9].) Despite Plaintiffs' warnings and attempted licensing negotiations, Defendants continued to perform such musical compositions without Plaintiffs' permission. (Dkt. No. 34, at 3 [Stevens Decl. ¶¶ 10, 11].) The Court is not prohibited from awarding statutory damages to Plaintiffs when, at best, Defendants recklessly disregarded Plaintiffs' rights under the Copyright Act. *Bryant,* 603 F.3d at 143 (stating the alleged infringer has the burden of proving innocence while the copyright holder has the burden of proving willfulness).

Moreover, the Court finds that Plaintiffs' requested award of four thousand dollars ($4,000.00) per infringement is fair and reasonable. As discussed above, the uncontroverted evidence establishes that Defendants knew that the public performance of Plaintiffs' musical compositions constituted infringement and nevertheless continued to provide performances of Plaintiffs' works at the Irish Times. Further, Plaintiffs submitted affidavits asserting that the

unpaid licensing fees to which they would have been entitled from Defendants between February 2010 and January 2013 would have been approximately twelve thousand seven hundred forty-four dollars and forty-eight cents ($12,744.48). (Dkt. No. 34, at 4 [Stevens Decl. at ¶ 16].) With an award of four thousand dollars ($4,000.00) per each of the six infringements, Plaintiffs are asking for statutory damages less than two times the amount of licensing fees to which Plaintiffs were entitled. *See N. Lights,* Inc., 555 F. Supp.2d at 333 (awarding plaintiff $4,000.00 per infringement for ten acts of infringement alleged in complaint where affidavit asserted a loss of $24,890.61 in unpaid licensing fees); *Broad. Music, Inc., v. R. Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) (awarding statutory damages in an amount of five times the unpaid licensing fees). The Court notes that Defendants' culpable state of mind, Plaintiffs' loss in licensing fees, the deterrent effect such award will have on Defendants and third parties, and Defendants' general strategy of delay and noncompliance are further factors that weigh in favor of awarding Plaintiffs' requested statutory damages.

Finally, the Court notes that, even if it had not found Defendants willfully infringed Plaintiffs' copyrights, an award of four thousand dollars ($4,000.00) per infringement would have appropriately fallen within the statutory limits imposed by 17 U.S.C. § 504(c)(1).

 For all of these reasons, Plaintiffs' request for statutory damages in the amount of twenty-four thousand dollars ($24,000.00) is granted.

### 4.      Whether Plaintiffs Are Entitled to Attorneys' Fees

After carefully considering the matter, the Court must answer this question in the negative.

Pursuant to Section 505 of the Copyright Act, a district court may "in its discretion . . . award a reasonable attorneys' fee to the prevailing party" of a copyright suit. 17 U.S.C. § 505. When considering whether attorneys' fees are appropriate, a district court may consider, among others, the following factors: "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *Bryant,* 603 F.3d at 144; *Haibo, Inc.*, 2012 WL 1377395, at *1. While any of these factors may be used "so long as [they] are faithful to the purpose of the Copyright Act, the Second Circuit has specifically noted that the objective reasonableness factor should be given substantial weight in determining whether to award attorneys' fees." *Haibo, Inc.*, 2012 WL 1377395, at *1 (internal citations omitted).

Here, as previously discussed, Defendants ignored Plaintiffs' repeated warnings of copyright infringement and failed to engage in negotiations over licensing rights despite Plaintiffs' multiple offers. Such willful blindness constitutes "objective unreasonableness." *DFK Entm't*, 2012 WL 893470, at *5 (holding it was objectively unreasonable for defendant to repeatedly ignore plaintiff's letters and phone calls). Furthermore, Defendants here have failed to offer any viable explanation or defense for their infringement. As the courts noted in *DFK Entertainment* and *Haibo, Inc.*, when defendants in a copyright infringement case receive multiple warnings of their violations but fail to take action, and when they are also unable to offer a viable explanation or defense for such violations, awarding a fee is appropriate and necessary to advance the Copyright Act's "considerations of compensation and deterrence." *See id*; *Haibo, Inc*., 2012 WL 1377395, at *1. The Court also finds that Defendants adopted a strategy of noncompliance and delay in responding to Plaintiffs' demands to cease infringement

and these subsequent legal proceedings. Such factors weigh in favor of awarding Plaintiffs reasonable attorneys' fees.

With regard to the amount of attorneys' fees to award, the Second Circuit awards attorneys' fees based on a "presumptively reasonable fee" calculated by multiplying the reasonable hourly rate, by the hours reasonably expended. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 141 (2d Cir. 2007); *DFK Entm't*, 2012 WL 893470, at *6. Generally, a court determines the hours reasonably expended by reviewing contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done. *Arbor Hill Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191 (2d. Cir. 2008); *see, e.g., Dotson v. City of Syracuse*, 04-CV-1388, 2014 WL 1764494, at *2 (N.D.N.Y. Apr. 30, 2014) (Mordue, J.) (identifying differing reasonable hourly rates based on the seniority and skill of attorneys and legal staff, as well as the type of work performed). It is therefore generally the case that applications for attorneys' fee awards be documented by such contemporaneously created records. *See Kirch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Where descriptions of work performed are "vague and ambiguous, the court cannot assess the reasonableness of the entries." *Dotson*, 2013 WL 1764494, at *3. Consequently, the court may eliminate or reduce the fees. *Baim v. Notto*, 316 F. Supp.2d 113, 122 (N.D.N.Y. 2003) (Hurd, J.).

Here, there is insufficient documentation before the Court to consider what a presumptively reasonable fee would be in this case. While some courts have declined to eliminate or reduce the presumptively reasonable fee amount where individual entries lack specificity and detail, the Court here finds the entire record lacking. *See, e.g., Dotson*, 2013 WL

1764494, at *3 ("[W]hile some of the individual entries lack specificity and detail, the Court finds that such entries, when considered in the context of the entire billing summary, generally establish the subject matter of the work performed."); *Bridges v. Eastman Kodak*, 91-CV-7985, 1996 WL 47304, at *4 (S.D.N.Y. Feb. 6, 1996) (declining to reduce the presumptively reasonable fee amount, notwithstanding occasional vague descriptions of work, where the records, overall, indicated reasonableness of each task and time expended). Plaintiffs' counsel has requested an award of seven thousand dollars ($7,000.00) for work up to the preparation and filing of Plaintiffs' motion for default judgment. (Dkt. No. 32, Attach. 2, at 2 [Slifkin Decl. ¶ 11].) Counsel submits that seven thousand dollars ($7,000.00) represents 17.5 hours of work at a rate of four hundred dollars ($400.00) per hour. (Dkt. No. 32, Attach. 2, at 2 [Slifkin Decl. ¶ 10].) However, counsel has failed to provide any invoices, expenditure reports, or billing statements, and thus this Court can neither determine the reasonableness of each task and the time expended, nor who performed the work at issue.

For these reasons, Plaintiffs' request for attorneys' fees is denied without prejudice to refiling within thirty (30) days of the date of this Decision and Order.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 32) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendants Roche and Wexford, and all persons acting on their permission or authority, are **PERMANENTLY ENJOINED** from infringing the copyrighted musical compositions licensed by Plaintiff Broadcast Music, Inc.; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiffs and against Defendants Roche and Wexford in the amount of **TWENTY-FOUR THOUSAND DOLLARS ($24,000.00)**; and it is further

**ORDERED** that Plaintiffs' request for attorneys' fees is **<u>DENIED</u> without prejudice** to refiling within **THIRTY (30) DAYS** of the date of this Decision and Order; and it is further

**ORDERED** that this Court retain jurisdiction over this action for the purpose of enforcing the judgment granted. The Clerk of the Court is directed to enter judgment and close this case.

Dated: September 15, 2014
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge